IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BENJAMIN WALBORN, etc., et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )  CIVIL ACTION 25-0531-WS-N |
| | ) |
| ORANGE BEACH CITY BOARD OF | ) |
| EDUCATION, et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This matter is before the Court on the motion of defendant Mary Catherine Law ("Law") to dismiss.  (Doc. 23).  The plaintiffs have filed a response and Law a reply, (Docs. 42, 46), and the motion is ripe for resolution.  After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.


## BACKGROUND

The operative pleading is the first amended complaint ("the Complaint").  (Doc. 8).  The two named plaintiffs ("Ben" and "Melissa") are the parents of two minor children ("B.W." and "I.W.").  Ben and Melissa sue both individually and as the parents and guardians of B.W. and I.W.  The defendants are the Orange Beach City Board of Education ("the Board"); the Orange Beach City School District ("the District"); the superintendent of Orange Beach City Schools ("Wilkes"); and Law, the principal of Orange Beach Elementary School.  The individual defendants are sued in both their individual and official capacities.[1]

---

[1] The Complaint purports to name fictitious defendants, but such practice generally is not recognized in actions, such as this one, originally brought in federal court.  *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).  There is a limited exception to this rule, *id.*, but the Complaint's vague description of the fictitious defendants simply as those "responsible in

According to the Complaint, the Walborns live in Escambia County, Florida, but B.W. and I.W. were enrolled as non-resident students in Orange Beach City Schools pursuant to Board policy ("Policy 5.11").  In July 2024, B.W. participated in a private text message group with six other students, during which several of them made hostile, aggressive, and bullying remarks toward B.W.  When the Walborns contacted the parents of these students about the matter, they accused Ben of having authored the subject messages, which was not true.  On July 30, Ben reported the bullying to Wilkes and requested that B.W. be placed in a homeroom separate from these students.  Two days later, and without further discussion or contact, Wilkes issued a letter revoking the enrollment of both B.W. and I.W., effective immediately.  The letter expelling[2] them falsely accused B.W. of hostile participation in the chat.  (Doc. 8 at 4-6).

The Complaint asserts the following claims:

- Count One          violation of the Due Process Clause
- Count Two          retaliation in violation of the First Amendment
- Count Three        breach of contract
- Count Four         negligence
- Count Five         intentional infliction of emotional distress
- Count Six          tortious interference with contractual relations
- Count Seven        arbitrary and capricious decision-making
- Count Eight        violation of the Equal Protection Clause
- Count Nine         defamation
- Count Ten          injunctive and declaratory relief

---

some manner for the events and wrongful actions described herein," (Doc. 8, ¶ 11), plainly does not satisfy it.

[2] Law prefers the phrase, "revoking ... enrollment."  (Doc. 23 at 2, 3).  There appears to be no meaningful difference between the terms.  *See Barnes v. Zaccari*, 669 F.3d 1295, 1298 (11th Cir. 2012) ("administratively withdrew" was a euphemism for "expelled").  Like the *Barnes* panel, the Court will use the pithier expression.

2

(Doc. 8 at 8-27).  Most of the claims are asserted against "all defendants."  However, Count Three is asserted against only the entity defendants, and Count Nine is asserted against only Wilkes.  (*Id*. at 13, 25).  Law seeks dismissal of all claims asserted against her.  (Doc. 23 at 1, 35).

## DISCUSSION

Law, in her statement of the "dismissal standard," recites the principles of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and its progeny.  (Doc. 23 at 5-6).  Those standards apply in all cases but, as the Court has recently reminded litigants, "*Twombly*" is not a thaumaturgical word, and its mere incantation by a defendant furnishes no grounds for relief.  *Caldwell v. Kimberly-Clark USA, LLC*, 783 F. Supp. 3d 1367, 1383 (S.D. Ala. 2024).  Instead, a defendant must "mak[e] a satisfactory showing that, in certain, specified respects, for certain, specified reasons, the complaint falls short of that [*Twombly*] standard."  *Id*.

## I.  Global Challenges.

Law begins with two arguments seeking dismissal of the entire Complaint at a stroke.

### A.  Shotgun Pleading.

The Complaint begins with thirteen numbered paragraphs identifying the parties and addressing jurisdiction and venue.  (Doc. 8 at 2-4).  It continues with 34 numbered paragraphs providing "general factual allegations."  (*Id*. at 4-8).  The Complaint then sets forth, as numbered counts, its ten claims for relief.  The first paragraph under each count reads, "Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein."  (*Id*. at 8-27).  Law argues that the plaintiffs' usage of the quoted sentence dooms the Complaint as a shotgun pleading that the Court is compelled to dismiss.  (Doc. 23 at 8-11).

The Eleventh Circuit recognizes four forms of shotgun pleading, one of which is "a complaint containing multiple counts where each count adopts the allegations of all

3

preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).  The Complaint meets that technical definition, but it does not follow that it must be dismissed on that ground.

This form of shotgun pleading is objectionable only if it "materially increase[s] the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324.  As Law acknowledges, (Doc. 23 at 8), dismissal is appropriate "where it is virtually impossible to know which allegations of fact are intended to support which claim[s] for relief." *Id*. at 1325 (internal quotes omitted).  As in *Weiland*, Law's failure to move for a more definite statement, or even to suggest that the use of incorporation language has caused her any confusion regarding which allegations underlie each count, (Doc. 23 at 8-11), speaks volumes.  792 F.3d at 1324 (noting that the defendants failed to move for a more definite statement "or otherwise assert that they were having difficulty knowing what they were alleged to have done and why they were liable for doing it").

### B.  Act or Omission.

The Complaint contains the following allegations mentioning Law:

- Law was the principal of Orange Beach Elementary School, (Doc. 8, ¶ 10);
- "Upon information and belief, she played a role in enforcing or supporting the decision to revoke the enrollment of B.W. and I.W. without justification," (*id*.);
- Wilkes' "expulsion letter [was] copied to" Law, (*id*., ¶ 28);
- Law, "as Principal, participated in enforcing the expulsion without ensuring compliance with procedural due process protections," (*id*., ¶ 56);
- Law, "as Principal, participated in enforcing the retaliatory expulsion without ensuring compliance with constitutional protections," (*id*., ¶ 68);

4

- Law, "as Principal, had a duty to protect the educational rights of students under her administration and negligently failed to ensure procedural safeguards before enforcing the expulsion," (*id.*, ¶ 86);

- Law "knew of the existence of this contractual relationship and w[as] aware that Plaintiffs had complied with all terms of the agreement," (*id.*, ¶ 97); and

- Law, "as Principal, participated in enforcing this unequal treatment by failing to prevent the wrongful expulsion."  (*Id.*, ¶ 114).

Law argues that these allegations "simply d[o] not allege an act or omission by" her and that the Complaint therefore must be dismissed.  (Doc. 23 at 7).  Law acknowledges that the Complaint repeatedly alleges that she "enforc[ed]" the expulsion (which is certainly an act), (*id.* at 4), but she argues that these allegations are inadequate because the initial articulation of this allegation limits its source to "information and belief."  (*Id.* at 7).

It may or may not be that an allegation made on information and belief cannot be considered unless supported by other factual material rendering the allegation plausible. *Compare Doe v. Samford University*, 29 F.4th 675, 692 (11th Cir. 2022) ("Assuming -- as we must -- that Doe's 'information and belief' allegation is truthful ....") *with Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) ("[W]e do not have to take as true Mann's allegations 'upon information and belief' ... without enough facts to make that statement plausible ....").  The Court need not decide that issue, because Law has not explained how other factual material within the Complaint fails to render plausible the allegation that she participated in enforcing the expulsion.  Law is alleged to be the principal of the school from which B.W. and I.W. were expelled.  (Doc. 8, ¶ 10).  It may not be inevitable that Law, as principal, enforced the expulsion from her school, but it is certainly plausible that she did so.

In her reply brief, Law argues for the first time that it is not enough for the plaintiffs to allege that she enforced the expulsion but that they must allege specific acts

of enforcement.  (Doc. 46 at 2).[3]  As this Court reminded the parties only days before Law filed her reply brief, "the Court will consider a non-jurisdictional argument first raised in a reply brief only if the offending party articulates an adequate reason for its failure to present in its principal brief an argument then available to it."  (Doc. 43 at 12 n.8).  Law having articulated no such reason, her tardy argument will not be considered. The Court does, however, note Law's failure to identify any authority supporting her position.  (Doc. 46 at 1-2).

## II.  Challenges to Federal Claims.

As noted, the plaintiffs bring federal claims arising under the Due Process Clause, the Equal Protection Clause, and the First Amendment.

### A.  Official Capacity Claims.

Law argues that all federal claims against her in her official capacity should be dismissed as duplicative of claims against the Board.  (Doc. 23 at 11-12).  As the Court noted in its order resolving the entity defendants' motion to dismiss, (Doc. 43 at 3-4), the plaintiffs seek prospective declaratory and injunctive relief under each of their federal claims, the granting of which may require the pendency of an official-capacity claim. Law does not disagree.  (Doc. 46 at 4-5).

### B.  Due Process.

Count One asserts a claim for deprivation of property without procedural due process.  (Doc. 8 at 8-11).[4]  Law asserts that the plaintiffs have no property interest to

---

[3] In the section of her principal brief entitled, "Factual Allegations Against Law," Law stated that the Complaint includes no "allegation ... of any specific act or omission that Principal Law committed," (Doc. 23 at 4), but she fashioned no argument from this statement.  (*Id*. at 6-7).

[4] The plaintiffs insinuate that they have also alleged a deprivation of property without substantive due process, (Doc. 42 at 10), but the Complaint explicitly alleges that the defendants' conduct violated "their constitution right to *procedural* due process."  (Doc. 8, ¶ 52 (emphasis

which due process protections could attach.  Law also raises qualified immunity as an affirmative defense.

### 1.  Property interest.

Law concedes that Alabama law invests Alabama residents with a property interest in attending Alabama schools.  She denies, however, that Alabama law likewise invests Florida residents with such a property interest.  (Doc. 23 at 20).  As the Court noted in denying the entity defendants' motion to dismiss this claim, it is unnecessary for state law to bestow a property interest on the plaintiffs, so long as other ""sources'" provide "'rules or understandings ... that support claims of entitlement'" to an Alabama public school education.  (Doc. 43 at 8-9 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972))).  The Complaint identifies this source as Policy 5.11.  (Doc. 8, ¶¶ 43-44).  That policy provides an exclusive list of reasons for which a non-resident student may be expelled.  (Doc. 8-1 at 94).

As the Court noted in its previous order, (Doc. 43 at 9-10), "[w]hen a public employee is in a position where they can only be discharged for cause, the public employee has a constitutionally protected property interest in their employment and cannot be fired without due process." *Edwards v. Dothan City Schools*, 82 F.4th 1306, 1310 (11th Cir. 2023).  As with public employees, so with public school students:  It is "clearly established that when a government benefit cannot be removed except for cause, an individual has a property interest in that benefit protected under the Due Process Clause." *Barnes v. Zaccari*, 669 F.3d 1295, 1307 (11th Cir. 2012) (internal quotes omitted).  The benefit at issue in *Barnes* was "continued enrollment" in a public university. *Id*.

As discussed in the Court's previous order, Policy 5.11 restricts the reasons that will support expulsion of a nonresident student.  In particular, it permits expulsion only

---

added)).  As the Court has previously ruled, (Doc. 43 at 8 n.7), the Complaint asserts no substantive due process claim.

7

for:  inappropriate behavior; poor disciplinary record; excessive tardiness; excessive absence; unsatisfactory academic performance; falsification of school or legal documents; late payment of tuition; attempted circumvention of school/school system policies/procedures; and "[a]ny other good and sufficient reason."  (Doc. 8-1 at 94).  As the Court concluded, "[t]he plaintiffs, it seems, could not be expelled on administrative whim," and their position "would seem comparable to that of public employees subject to termination only for cause."  (Doc. 43 at 9).

Even though the Complaint expressly grounds the plaintiffs' claim of a property interest in Policy 5.11, (Doc. 8, ¶ 51), Law in her principal brief did not challenge its sufficiency to demonstrate a property interest.  (Doc. 23 at 19-21).  In her reply brief, Law for the first time asserts that Policy 5.11, by listing "[a]ny other good and sufficient reason," converted a plainly for-cause restriction on expulsion into a regime of expulsion "without cause."  (Doc. 46 at 8-9).  Asserts, it must be said, by *ipse dixit*.  She does not explain, for example, why the quoted phrase would not be limited, under the doctrine of *ejusdem generis*, to wrongdoing by the student or his parents, and wrongdoing comparably serious to the listed offenses.  She declares that, "[w]here there is discretion to revoke the enrollment, there is no legitimate claim to entitlement, and thus no protected property interest," (*id*. at 8), but *Barnes*, her sole authority for the proposition, says nothing remotely supporting it.  There is always discretion to terminate public employment or enrollment; a for-cause limitation simply limits the circumstances under which that discretion can properly be exercised.  In any event, Law's withholding of this argument until her reply brief of itself eliminates her ability to achieve dismissal on this ground.

Finally, Law argues that, even if the plaintiffs have a property interest in attending public school in Alabama, they cannot have such a right in attending Orange Beach Elementary School in particular.  (Doc. 23 at 20-21).  If the plaintiffs -- like those in the cases on which she relies -- were asserting a property interest in a public education bestowed by general state law, Law might have a point.  The plaintiffs, however, are claiming a property interest bestowed by a particular school system under a particular

8

policy to attend a particular school (indeed, the only elementary school within the system).  The resulting property interest is, by logical necessity, in attending that school.

### 2.  Qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority."  *Harbert International v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).  The burden then shifts to the plaintiff to show that the defendant's conduct "violated a clearly established statutory or constitutional right."  *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003).

The plaintiffs concede that Law's alleged conduct involved discretionary functions for purposes of qualified immunity analysis.  (Doc. 42 at 13).  They nevertheless challenge this element of qualified immunity on the grounds that Law allegedly "exercised [her] authority in an unconstitutional manner."  (*Id*. at 14).  That she may have done so is irrelevant to the discretionary-function analysis.  *E.g., Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (in determining whether a challenged action was within the scope of the defendant's discretionary authority, courts "temporarily pu[t] aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances") (internal quotes omitted).  Law therefore has satisfied her initial burden.

Turning to the plaintiffs' burden, Law identifies a single flaw with their due process claim:  that "[t]here is no due process right for an out of state student to attend a particular school."  (Doc. 23 at 25).  Law's argument flows from her misapprehension that the plaintiffs' property interest derives from generally applicable state law.  As made clear in Part II.B.1, however, the plaintiffs' property interest in fact rests on the entity

defendants' specific conduct of admitting the plaintiffs as students, subject to expulsion only for certain reasons, in which context there is no logical or legal reason (at least, none identified by Law) that her proposed restrictions would or even could exist. Law having identified no arguable defect in the plaintiffs' claim, the qualified immunity inquiry is at an end, at least at this stage of the proceedings. *Cf. Andreu v. Sapp*, 919 F.2d 637, 643 (11th Cir. 1990) (the qualified immunity defense "cannot be manipulated by arguing that the common sense meaning of a familiar term is unclear merely because a court has yet to construe the term").

### C. First Amendment.

Count Two asserts a claim that the defendants violated the First Amendment by expelling the minor plaintiffs in retaliation for Ben's exercise of his free speech rights. (Doc. 8 at 11-13). Law argues that the Complaint fails to allege that she was aware of Ben's speech or that she participated in the decision to expel the minor plaintiffs. (Doc. 23 at 25-27). The plaintiffs respond that Law's assertions "directly contradict the allegations of the Complaint." (Doc. 42 at 17).

The Complaint explicitly and repeatedly identifies Wilkes as the decisionmaker regarding the expulsion.[5] Every allegation referencing Law is set forth in Part I.B, *supra*, and they include no allegation that Law made the decision to expel, that she participated in making that decision, that she advised Wilkes regarding his decision, that she was aware that a decision was being considered, or even that she was aware of Ben's speech or the group chat incident. The plaintiffs' assertions to the contrary are, put simply, wrong.

---

[5] Wilkes "was the final authority for the decision to expel" the minor plaintiffs. (Doc. 8, ¶ 9). On August 1, 2024, "Wilkes issued a letter unilaterally revoking the enrollment of" the minor plaintiffs. (*Id.*, ¶ 27). "The decision to revoke Plaintiffs' enrollment was made by Defendant Wilkes ...." (*Id.*, ¶ 53). "Defendant William R. Wilkes, as Superintendent, was the final decision-maker in revoking [the minor plaintiffs'] enrollment ..." (*Id.*, ¶ 55). "Defendant William R. Wilkes, as Superintendent, was the final decision-maker in the expulsion ..." (*Id.*, ¶ 67). "Defendant William R Wilkes ... arbitrarily revoked the students' enrollment." (*Id.*, ¶ 85).

10

It is true that Count Two alleges generally that "Defendants retaliated by revoking [the minor plaintiffs'] enrollment." (Doc. 8, ¶ 65). However, it then identifies Law's wrongdoing as that she "participated in enforcing the retaliatory expulsion without compliance with constitutional protections," (*id*., ¶ 68), an allegation of a piece with all the other specific allegations regarding Law's connection to this lawsuit. "Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). Thus, for example, where coverage depends on whether there was "physical damage" to the insured property, specific allegations regarding the damage govern over a general allegation that physical damage occurred. *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1362 (11th Cir. 2022). Because the specific allegations of the Complaint negate Law's status as a participant in the expulsion decision, a general and conclusory allegation that all defendants revoked the minor plaintiffs' enrollment must be ignored in favor of the specific allegations regarding Law's limited role.

Law does not deny that Count Two adequately alleges her participation in enforcing the expulsion without ensuring compliance with constitutional protections. She does, however, assert that she is protected by qualified immunity. (Doc. 23 at 27). As noted in Part II.B.2, the plaintiffs effectively concede that Law satisfies the threshold, discretionary-function element of this defense.

Law argues that "there was no clearly established law that enforcing a decision made by the Superintendent without knowledge of the basis for the decision [*i.e.*, First Amendment retaliation] or involvement in the decision violated the First Amendment." (Doc. 23 at 27). The plaintiffs' theory of liability is indeed peculiar, yet they make no effort to demonstrate that it is viable, much less to show that in July 2024 it was clearly established as such by the Supreme Court, the Eleventh Circuit, the Alabama Supreme

11

Court, or other federal appellate courts.[6]  The plaintiffs' silence in the face of Law's protestation is fatal to their damages claim against her.

In addition to compensatory and punitive damages, Count Two seeks from Law declaratory and injunctive relief.  (Doc. 8 at 13).  "[Q]ualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, and may not be effectively asserted as a defense to a claim for declaratory or injunctive relief."  *Benning v. Commissioner*, 71 F.4th 1324, 1335 (11th Cir. 2023) (internal quotes omitted).  To this extent, Count Two therefore remains pending against Law in her individual capacity.

### D.  Equal Protection.

Count Eight alleges a violation of the Equal Protection Clause, identifying four classes of disparate treatment: (1) expelling the minor plaintiffs but not "similarly situated students"; (2) disciplining B.W. but not "students who engaged in bullying in the same group chat"; (3) expelling I.W. but not other non-participants in the group chat; and (4) retaliating against the plaintiffs for reporting bullying but not "other parents who had not raised concerns."  (Doc. 8, ¶ 111).

The claim is not based on the plaintiffs' membership in a protected class but is instead brought as a class-of-one claim under *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Such a claim requires the plaintiffs to show that they and their comparators are "prima facie identical in all relevant respects," *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010) (emphasis and internal quotes omitted), meaning "in light of all the factors that would be relevant to an objectively reasonable government decisionmaker."  *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1285 (11th Cir. 2021) (internal quotes omitted).

---

[6] *See generally Gilmore v. Georgia Department of Corrections*, 144 F.4th 1246, 1251, 1259, 1263 (11th Cir. 2025) (en banc) (cases from other Courts of Appeal may be considered under the "obvious clarity" method of demonstrating that a defendant's conduct violated a clearly established constitutional right).

12

The entity defendants challenged only the second of the four classes identified in the Complaint, arguing that the other participants in the group chat could not be similarly situated to B.W. unless they, like him, were enrolled as non-residents rather than as residents. (Doc. 11 at 23-26; Doc. 15 at 12). The plaintiffs' response likewise addressed only the second class of disparate treatment. (Doc. 14 at 11). The Court ruled that the entity defendants had failed to show that the residence of the students involved in the group chat incident would be relevant to an objectively reasonable school official in determining the punishment for the same conduct of engaging in hostile text messages. (Doc. 43 at 13). The Court further ruled that the movants had failed to show that the plaintiffs were required by pleading rules to identify the other group chat participants by name, especially given that Ben had reported the bullying to Wilkes and asked that the six individuals not be in B.W.'s homeroom. (*Id*.; Doc. 8, ¶ 25).

Law's argument does not distinguish among the four alleged classes of disparate treatment. She says only that the plaintiffs "have not identified anyone by name in the same non-resident program who was in a similar situation and who was treated differently." (Doc. 23 at 34). To the extent Law is addressing the second class, her argument fails for the same reasons as did the entity defendants' argument along those lines.

The plaintiffs' response understands Law's challenge to extend to the first class. As to that class, the plaintiffs say that their comparators are "other students participating in the non-resident enrollment program," (Doc. 42 at 23), and so presumably not the six individuals included in the group chat. This clarification activates Law's challenge to the plaintiffs' failure to identify the comparators by name. Because Law simply demands that the comparators be named, without offering any authority or analysis requiring such specificity, her argument fails.

The equal-protection allegation regarding Law is that she "participated in enforcing this unequal treatment by failing to prevent the wrongful expulsion." (Doc. 8, ¶ 114). Law again asserts qualified immunity, (Doc. 23 at 34), and the plaintiffs again have effectively conceded that she satisfies the discretionary-function element. Part

13

II.B.2, *supra*.  Law argues that "[t]here is no clearly established law that simply enforcing [Wilkes'] decision revoking school enrollment of a non-resident student is a violation of the Equal Protection Clause." (Doc. 23 at 34).  As with their First Amendment claim, the plaintiffs present an apparently unorthodox equal protection theory as to Law.  And as with their First Amendment claim, the plaintiffs simply ignore Law's qualified immunity challenge.  They do so at their peril.

Because Law is clothed with qualified immunity as to Count Eight, the claim against her in her individual capacity must be dismissed to the extent it seeks an award of damages but retained to the extent it seeks declaratory or injunctive relief.

### III. Challenges to State Claims.

#### A. Official Capacity Claims.

Law invokes the sovereign immunity bestowed on the State of Alabama by Section 14 of the Alabama Constitution.  (Doc. 23 at 12).  Law assumes rather than demonstrates that she partakes of its protection, but the Court in its order resolving the entity defendants' motion to dismiss has agreed that the Board falls within the reach of Section 14 and that this provision precludes an award of damages against either the Board or an official of the Board in his or her official capacity.  (Doc. 43 at 4).  Therefore, all demands for damages under the state-law claims have been dismissed to the extent pressed against the Board and/or Law in her official capacity vis-a-vís the Board.  (*Id*. at 4-5, 15).[7]  Because Counts Four, Five, and Six seek only damages, those counts have been dismissed in their entirety as to Law in her official capacity vis-a-vís the Board. (*Id*.).

Counts Seven and Ten seek injunctive relief.  Section 14 generally is no bar to such relief as to a state official in her representative capacity "where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation

---

[7] Because the status of the District, both in general and for purposes of Section 14, remains undetermined, (Doc. 43 at 3, 5 n.4), Law cannot obtain dismissal of the state law-claims to the extent pressed against her in her official capacity vis-a-vís the District.

of the law." *Alabama State University v. Danley*, 212 So. 3d 112, 123 (Ala. 2016) (internal quotes omitted).  Relying on *Danley*, Law initially argued that the demands for injunctive relief against her should be dismissed because the Complaint fails to allege that her conduct falls within any of the *Danley* exceptions.  (Doc. 23 at 14).  After the plaintiffs pointed out that the Complaint in fact contains such allegations, (Doc. 42 at 7), Law in her reply brief concedes the point but then raises a new argument:  that the Complaint contains no allegations of substantive facts to support the allegations regarding the quality of her conduct.  (Doc. 46 at 5).  Because Law articulates no reason for her failure to make this argument in her principal brief, it will not be considered.

### B.  State-Agent Immunity.

A state agent performing certain sorts of functions is clothed with immunity from civil liability in her individual capacity unless either positive law requires otherwise or the agent "acts willfully, maliciously, fraudulently, in bad faith, beyond ... her authority, or under a mistaken interpretation of the law." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).  A public school principal is a state agent for purposes of this rule. *E.g., Ex parte Runnels*, 364 So. 3d 979, 983 (Ala. 2022).  State-agent immunity is an affirmative defense. *Burton v. Hawkins*, 364 So. 3d 962, 968 (Ala. 2022).

Law asserts that she meets the discretionary-function requirement for state-agent immunity because she "was exercising judgment in the administration of a department or agency of government and exercising judgment in the discharge of duties imposed by statute, rule or regulation in educating students."  (Doc. 23 at 15-16).  If so, Law satisfies *Cranman*'s second and fifth categories of functions that may give rise to state-agency immunity.  792 So. 2d at 405.

Law, however, has not demonstrated that she falls within either category.  She identifies no statute, rule, or regulation, no duty imposed by them that she was discharging, and no exercise of judgment in her performance.  All she has done is declare that she was performing a protected function, without offering any discussion of the Complaint, of the rules governing expulsion of students, or of anything else, including the

legal parameters of the *Cranman* categories. She cites a single case, which assumed rather than reasoned that "the investigation, assessment, and imposition of student discipline were well within the discretionary functions of" a principal and assistant principal. (Doc. 23 at 16). Even if that is a correct proposition, Law has consistently and correctly noted that she is not alleged to have been involved with the investigation of the group chat incident, the assessment of the incident (or of Ben's involvement), or the imposition of expulsion as a sanction.

In her reply brief, Law correctly notes that the plaintiffs failed to address the discretionary-function element of state-agent immunity. (Doc. 46 at 5). The initial burden, however, as Law herself admits, (Doc. 23 at 15), is on her to show that her conduct falls within one of *Cranman*'s listed categories. An express concession by the plaintiffs that Law has satisfied the discretionary-function element of *Cranman* (as they provided with respect to the related but distinct discretionary-function element of qualified immunity) would relieve Law of that burden, but their mere silence does not do so. *See generally Gailes v. Marengo County Sheriff's Department*, 916 F. Supp. 2d 1238, 1243 (S.D. Ala. 2013) ("In sum, until the Eleventh Circuit (or Supreme Court) speaks more clearly to the issue or a sister Court (or litigant) provides a more compelling rationale, the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss.").

Because Law failed to carry her burden as to the threshold discretionary-function question, she cannot obtain dismissal of any state claim based on state-agent immunity. Because this is so, the Court need not consider the parties' arguments regarding *Cranman*'s exceptions to such immunity.

## C. Negligence.

Count Four alleges that the defendants owed the plaintiffs "a duty of care to follow established policies and procedures regarding student enrollment, discipline, and due process protections." (Doc. 8, ¶ 83). Law in particular "had a duty to protect the

16

educational rights of students under her administration and negligently failed to ensure procedural safeguards before enforcing the expulsion." (*Id.*, ¶ 86).

Law first objects that the plaintiffs "provide no further basis for this alleged 'duty' owed to them," (Doc. 23 at 27), but she offers no support for her implicit assumption that the rules of pleading require them to do so.

Law next argues that Count Four fails to allege a breach of the asserted duty, *viz.*, a failure to follow established policies and procedures. (Doc. 23 at 27). The Complaint, however, expressly alleges that she "failed to ensure procedural safeguards before enforcing the expulsion." (Doc. 8, ¶ 86).

Finally, Law asserts that "she was simply enforcing the decision made by the Superintendent." (Doc. 23 at 27). The allegation of the Complaint, however, is that she was not at liberty simply to blindly enforce his expulsion decision without first confirming that the plaintiffs had received due process and other procedural protections.

### D.  Intentional Infliction of Emotional Distress.

Count Five alleges that the defendants engaged in extreme and outrageous conduct that inflicted severe emotional distress on the plaintiffs. Without sorting out the defendants individually, the Complaint identifies this conduct as:  (1) expelling the minor defendants without justification and without notice and an opportunity to be heard; (2) disregarding the plaintiffs' concerns about bullying and instead punishing the minor plaintiffs by expelling them; (3) failing to conduct any proper investigation; (4) falsely, and without evidence, attributing hostile behavior to B.W.; (5) retaliating against the plaintiffs after they raised legitimate concerns about B.W.'s treatment; and (6) abruptly disrupting the minor plaintiffs' education, damaging their reputation, and isolating them from their peers. (Doc. 8, ¶ 91). Law does not argue that any of this conduct does not apply to her. Instead, she argues that all of this conduct combined fails as a matter of law to constitute extreme and outrageous conduct under Alabama law. (Doc. 23 at 28-29).

In order to be extreme and outrageous, the conduct complained of must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of

17

decency, and to be regarded as atrocious and utterly intolerable in a civilized society."
*21st Mortgage Corp. v. Robinson*, 429 So. 3d 381, 393 (Ala. 2024) (internal quotes
omitted).  Law stresses that the Alabama Supreme Court has recognized the tort in only a
handful of circumstances:  wrongful conduct in the family-burial context; barbaric
methods employed to coerce an insurance settlement; and egregious sexual harassment.
(Doc. 23 at 29).  Missing from Law's list is abuse of a medical/counseling relationship
with a vulnerable teenager that involved trading addictive drugs for sex.  *O'Rear v. B.H.*,
69 So. 3d 106 (Ala. 2011).  As Law concedes, the Supreme Court has "indicated that the
factual scenarios allowing recovery for the tort of outrage ... are not necessarily limited to
those found in prior caselaw."  *21st Mortgage*, 429 So. 3d at 393.

Law's argument depends on four cases in which the Alabama Supreme Court or
the Eleventh Circuit ruled that the allegations or evidence did not rise to the level of
extreme and outrageous conduct.  Law asks the Court to extrapolate that, because the fact
patterns in those cases did not involve extreme and outrageous conduct, neither does the
plaintiffs'.  (Doc. 23 at 29).  Two of the fact patterns involved mild (not egregious) sexual
harassment.  A third involved a physician hitting a nurse with a surgical drape, thereby
exposing her to potential (but not actual) HIV infection.  These decisions are as
unremarkable as they are unrelated to the fact pattern in this case, and Law offers no
explanation how the Court could rationally draw from them the conclusion that the
plaintiffs here have failed to state a claim.

Law's final case is *Potts v. Hayes*, 771 So. 2d 462 (Ala. 2000).  According to Law,
*Potts* stands for the proposition that a hospital did not engage in extreme and outrageous
conduct when it "wrongly accused" the plaintiff nurse of having a drug problem, leading
to her investigation by the state nursing board.  (Doc. 23 at 29).  According to the
Alabama Supreme Court's description of the case (which reached the Court on appeal
from a plaintiff's verdict on the outrage claim), the challenged accusation was contained
in a letter submitted to the nursing board by the hospital administrator.  771 So. 2d at 464.
Previously, when it became apparent that the plaintiff had been frequently requesting
shots of Demerol, Phenergan, and like substances at the hospital to relieve her migraines,

18

the administrator contacted the board for advice on how to proceed; the board stated that he had a mandatory duty to report any such concerns. *Id*. at 463-64. When further investigation uncovered records indicating the nurse had checked out controlled substances without appropriate documentation and had received injections of controlled drugs without a physician's order, the administrator filed a report with the board setting out the details of the investigation. *Id*. at 464. This report spurred the board to conduct its own investigation, which resulted in formal charges against the plaintiff. *Id*. The trial judge found that the evidence "clearly demonstrated" that the administrator's report -- on which the outrage claim was based -- was "substantially correct," and he entered judgment for the defendants as a matter of law on the plaintiff's libel, slander, and contract claims, while letting the outrage claim reach the jury. *Id*. The Alabama Supreme Court ruled that the evidence was insufficient to support a plaintiff's verdict, with the evidence favoring the plaintiff essentially limited to testimony that the administrator had "never liked" the plaintiff. *Id*. at 465.

Contrary to Law's description, *Potts* stands for no more than the pedestrian proposition that a truthful report to a state board regarding apparent drug transgressions by a plaintiff subject to the board's oversight, made after investigation and pursuant to a mandatory duty to report any such concerns to the board, is not extreme and outrageous conduct, not even if the report comes from a person who does not like the plaintiff and not even if the report ultimately results in formal charges against the plaintiff. Law does not explain, and the Court does not discern, how a fact pattern so removed from that alleged in the Complaint could support a legal conclusion that the Complaint as a matter of law fails to state a clam of outrage.

It may well be that cases from the Alabama Supreme Court, the Alabama Court of Civil Appeals, the Eleventh Circuit, and/or sister courts within this state address fact patterns sufficiently analogous to that alleged in this case to suggest that the Complaint does not allege extreme and outrageous conduct. The only cases on which Law relies,

19

however, patently do not do so. Thus, as in other recent cases,[8] the Court must deny her motion to dismiss the outrage claim.

### E. Tortious Interference with Contractual Relations.

Count Six alleges that the plaintiffs had a valid and enforceable contract with the Board and District pursuant to a Board resolution; that Wilkes and Law knew of the contract and of the plaintiffs' compliance with it; and that they nevertheless intentionally interfered with the contract. (Doc. 8, ¶¶ 96-98).

Law's main argument is that she cannot be liable under this claim because she was principal of Orange Beach Elementary School and therefore was an employee and agent of the Board and District. (Doc. 23 at 31). It is correct that a claim for tortious interference with a contract will lie only against "a 'third party' or 'stranger' to the contract." *Waddell & Reed, Inc. v. United Investors Life Insurance Co.*, 875 F.2d 1143, 1154 (Ala. 2003). However, an employee or agent of a contracting party is a stranger to the contract only if "all the purported acts of interference were done within the scope of the interferer's duties as agent." *Id*. (internal quotes omitted). Law does not address this requirement and therefore cannot obtain relief on this ground.

Law also argues that "there is no factual allegation as to how [she] allegedly interfered with the contract." (Doc. 23 at 31). Law is partially correct on this score. Count Six alleges that "Defendants" interfered by: (a) revoking the minor plaintiffs' enrollment; (b) "[f]ailing to conduct a proper investigation before taking adverse action against" the plaintiffs; (c) misrepresenting the facts surrounding the expulsion decision, including by falsely attributing inappropriate behavior to B.W; and (d) engaging in retaliatory conduct after Ben raised concerns about bullying. (Doc. 8, ¶ 98).

As laid out in Part I.B, the Complaint sets forth specific allegations regarding Law's conduct. None of them accuse her of having revoked the minor plaintiffs' enrollment, of having misrepresented any facts surrounding that decision, of falsely

---

[8] *See Caldwell*, 783 F. Supp. 3d at 1392-93; *Rover v. Commonwealth Hotels Inc.*, 2026 WL 881192 at *4 (S.D. Ala. 2026).

attributing inappropriate behavior to B.W., or of engaging in retaliation based on Ben's speech.  On the contrary, the Complaint expressly alleges that *Wilkes* revoked the minor plaintiffs' enrollment;[9] that *Wilkes* falsely accused B.W. of inappropriate behavior;[10] and that *Wilkes* retaliated based on Ben's expressed concerns.[11]  As explained in Part II.C, the specific allegations of the Complaint that particular defendants engaged in particular conduct trump general allegations that "Defendants" globally did so.  Therefore, the plaintiffs cannot pursue Count Six against Law based on the allegations addressed in this paragraph.

The allegation that "Defendants ... [f]ail[ed] to conduct a proper investigation before taking adverse action," (Doc. 8, ¶ 98(b)), stands on different footing.  The "adverse action" may reasonably be understood as encompassing not only the expulsion decision (made by Wilkes) but also the enforcement of that decision, which the Complaint expressly alleges was the province of Law.  (*Id.*, ¶¶ 10, 56, 68, 86).  The "proper investigation" may reasonably be understood as encompassing not only Wilkes' pre-decision investigation but also Law's pre-enforcement investigation, as the Complaint expressly alleges that she enforced the expulsion decision "without ensuring compliance with procedural due process protections" and other "constitutional protections [presumably, as the allegation appears in Count Two, the First Amendment]."  (*Id.*, ¶¶ 56, 68).  As to this allegation, Count Six may proceed against Law.

### F.  Arbitrary and Capricious Decision-Making.

Count Seven alleges that the defendants engaged in arbitrary and capricious decision-making.  (Doc. 8, ¶¶ 102-07).  Law's only argument is that this "appears" to be a standard of review rather than a cause of action.  (Doc. 23 at 32).  Law provides no

---

[9] (Doc. 8, ¶¶ 9, 27, 53, 55, 67, 69).

[10] (*Id.*, ¶¶ 27- 28).

[11] (*Id.*, ¶¶ 25, 64-66).

authority or analysis in support of her *ipse dixit*, and the Court will supply none on her behalf.

### G. Injunctive and Declaratory Relief.

Count Ten seeks judicial declarations: that the defendants' actions violated the plaintiffs' constitutional rights; that the minor plaintiffs' expulsion was unlawful, arbitrary, and capricious; that the minor plaintiffs have a right to continued enrollment absent cause for removal and compliance with due process protections; and that any future retaliation for the plaintiffs' exercise of their legal rights would be unlawful. (Doc. 8 at 28). Count Ten further seeks injunctive relief requiring the defendants: to immediately reinstate the minor plaintiffs; to remove from their school records any negative material related to their expulsion; to cease any retaliatory actions; and to implement policies and training to ensure future compliance with constitutional requirements in disciplinary decisions. (*Id*. at 27-28).

In three brief, declarative sentences unaccompanied by precedent or analysis, Law argues that the plaintiffs have no viable path to obtaining from her the requested declaratory and injunctive relief. (Doc. 23 at 34-35). The first is that the plaintiffs' claims against her that would support such relief have all failed; as set forth above, they have not. The second is that the plaintiffs "are not entitled to the relief that they are requesting," which is far too opaque an assertion to be evaluated. The third is that the Complaint fails to allege that Law has the authority to provide the requested relief, an argument that cannot apply at all to the requests for declaratory relief; as for injunctive relief, Law provides no support for her assumption that a defendant's authority to provide such relief must be specifically alleged.

### CONCLUSION

For the reasons set forth above, Law's motion to dismiss is **granted** as to damages in her individual capacity under Counts Two and Eight; is **granted** as to damages in her official capacity vis-a-vís the Board under Counts Four, Five, Six, and Seven; is **granted**

22

as to Count Two to the extent based on any conduct by Law other than participating in enforcing the allegedly retaliatory expulsion; and is **granted** as to Count Six to the extent based on any conduct by Law other than failing to conduct a proper investigation before enforcing the expulsion.  Counts Four, Five, and Six are **dismissed** as to Law in her official capacity vis-a-vís the Board.  The motion to dismiss is in all other respects **denied**.

DONE and ORDERED this 31st day of July, 2026.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE