## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| BENJAMIN WALBORN, etc., et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 25-0531-WS-N |
| | ) |
| ORANGE BEACH CITY BOARD OF | ) |
| EDUCATION, et al., | ) |
| | ) |
|     Defendants. | ) |

### ORDER

This matter is before the Court on the motion of defendant William R. Wilkes ("Wilkes") to dismiss.  (Doc. 47).  The plaintiffs have filed a response and Wilkes a reply, (Docs. 50, 51), and the motion is ripe for resolution.  After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

The Court has already resolved a motion to dismiss filed by the Orange Beach City Board of Education ("the Board") and the Orange Beach City School District ("the District"), as well as a motion to dismiss filed by Mary Catherine Law ("Law").  The reader is assumed to be familiar with the amended complaint ("the Complaint"), the background of the lawsuit, and the claims asserted, as well as with the co-defendants' motions to dismiss and the Court's rulings thereon.  (Docs. 43, 52).

### I. Shotgun Pleading.

Wilkes argues that the Complaint is a shotgun pleading that the Court must dismiss in its entirety.  (Doc. 47 at 6-8).  The argument in his principal brief is identical to that made by Law and fails for the same reasons.  (Doc. 52 at 3-4).

In his reply brief, Wilkes argues that the Complaint is a shotgun pleading for entirely different reasons.  (Doc. 51 at 1).  Because Wilkes offers no explanation why he

withheld this argument from his principal brief, it will not be considered.  The Court's previous orders explain this rule.  (Doc. 43 at 12 n.8; Doc. 52 at 5-6).

## II.  Official Capacity Claims.

Wilkes argues that all federal claims against him in his official capacity should be dismissed as duplicative of claims against the Board.  (Doc. 47 at 9).  His argument is an essentially verbatim repetition of Law's argument and is substantively identical to the entity defendants' argument, and it fails for the same reasons as did they.  (Doc. 43 at 3-4; Doc. 52 at 6).

## III.  Sovereign Immunity.

Wilkes claims the protection of Section 14 of the Alabama Constitution as to all state claims seeking damages in his official capacity.  (Doc. 47 at 9-10).  For reasons given in the Court's previous orders, Wilkes is entitled to this relief in his official capacity vis-a-vís the Board but not vis-a-vís the District.  (Doc. 43 at 4-5; Doc. 52 at 14-15).

## IV.  State-Agent Immunity.

Wilkes seeks immunity from civil liability in his individual capacity as to all state claims pursuant to state-agent immunity.  (Doc. 47 at 11-14).  Except for its final paragraph, his argument is an essentially verbatim repetition of Law's argument and fails for the same reasons.  (Doc. 52 at 15-16).

## V.  Qualified Immunity.

Wilkes argues that he is entitled to qualified immunity as to all three federal claims.  (Doc. 47 at 17-20, 22, 27).  He must first show that his allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority.  (Doc. 52 at 9).  To meet this burden, he must show that he "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means

2

that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). That is, he must show that "objective circumstances compel the conclusion that [his] challenged actions occurred in the performance of [his] duties *and* within the scope of his authority." *Id*. at 1266 (internal quotes omitted, emphasis in original). Wilkes acknowledges that this is his burden. (Doc. 47 at 18).

The only action of Wilkes challenged by the plaintiff's federal claims is his decision to expel the minor plaintiffs. (Doc. 8, ¶¶ 9, 27, 53, 55, 67, 111). Wilkes' only effort to demonstrate that expelling students is a legitimate job-related function that he had power to effect is to say that "[s]upervision of students ... clearly falls within his discretionary authority." (Doc. 47 at 18). Assuming for present purposes only that supervising students is among the job functions the Board has assigned him, that single circumstance does not, and cannot, establish that the Board has authorized Wilkes to fulfill his supervision function by expelling students on his own initiative. Wilkes' failure to effectively address this element suffices to dictate the denial of qualified immunity, but the record appears to affirmatively support an inference that he lacked such authority.

Policy 5.33 addresses expulsions. The policy envisions that expulsion proceedings are to be initiated on recommendation of the principal (or hearing officer) to the superintendent, (Doc. 8-1 at 116), which may suggest that the superintendent is not authorized to initiate such proceedings unilaterally, as is alleged in this case. The policy also envisions that the student "shall be accorded due process of law prior to dismissal," (*id*.), which may suggest that the superintendent is not authorized to expel students without affording such process, as is alleged in this case. And the policy envisions that the Board will make findings or take action, (*id*.), which may suggest either that the Board will make all expulsion decisions or that the superintendent may make the expulsion decision only if the student or his parents have declined an offered opportunity for the Board to do so, which also did not occur in this case. The Court need not, and does not, make any definitive ruling on these points, since Wilkes' failure to demonstrate

3

his authority to make the challenged expulsion decision of itself requires denial of qualified immunity at this stage of the proceedings.[1]

## VI.  Due Process.

Wilkes seeks dismissal of Count One for want of a property interest.  (Doc. 47 at 15-17).  The argument in his principal brief is an essentially verbatim repetition of Law's argument and fails for the same reasons.  (Doc. 52 at 7-9).

In his reply brief, Wilkes argues that the plaintiffs concede that Ben and Melissa have no property interest.  (Doc. 51 at 5).  That is incorrect.  In his principal brief, Wilkes addressed only the minor plaintiffs, without arguing that their parents could have no property interest even if their children did.  (Doc. 47 at 15-17).  The plaintiffs simply followed suit; no language conceivably construable as a concession appears in their brief. (Doc. 50 at 7-8).

The balance of Wilkes' reply brief differs from Law's but alters nothing.  (Doc. 51 at 5-6).

## VII.  First Amendment.

Wilkes' argument regarding Count Two is longer than, and different from, Law's. (Doc. 47 at 20-22).  He first argues that the Complaint alleges speech only by Ben and retaliation only against the minor plaintiffs, and he proposes that Count Two therefore be dismissed as to Ben and Melissa.  (*Id*. at 21).  He offers no authority for his position, which therefore cannot be credited.

---

[1] Elsewhere, Wilkes suggests that the minor plaintiffs were not "expelled" but rather had their enrollment "revoked."  (Doc. 47 at 20).  He assumes rather than shows that there is a meaningful difference between the two expressions.  That view would appear to be in tension with the Eleventh Circuit's.  *See Barnes v. Zaccari*, 669 F.3d 1295, 1298 (11th Cir. 2012) (that a college president "administratively withdrew" the plaintiff was a euphemism for "expelled").  In any event, the Complaint alleges an expulsion, and Wilkes has not attempted to show that his preferred terminology controls the Complaint's terminology on motion to dismiss.

The Complaint alleges that Ben: reported to Wilkes his concerns that B.W. was being bullied; asked that B.W. not be placed in the same homeroom as the bullies; and raised concerns about how the school was handling the situation. (Doc. 8, ¶ 64). Wilkes argues that the first and second of these three are unprotected by the First Amendment. (Doc. 47 at 21-22). As to the first, his reasoning is that the group chat incident occurred off campus during summer break and therefore was not of school concern and -- perhaps a dangerous concession -- was unrelated to Wilkes' position and beyond his authority to investigate and discipline. As to the second, his reasoning is that classroom assignments are administrative/operational matters of no public concern. Wilkes cites no authority of any kind in support of his position, which fails for the same reasons as did the entity defendants' parallel, but more thoroughly developed, argument. (Doc. 43 at 11-12).

In his reply brief, Wilkes introduces a new argument: that, because only Ben engaged in speech, the claims of the other three plaintiffs must be dismissed. (Doc. 51 at 6-7). Because he presents no excuse for his failure to raise this argument in his principal brief, it will not be considered.

## VIII.  Negligence.

Count Four alleges that Wilkes owed the plaintiffs "a duty of care to follow established policies and procedures regarding student enrollment, discipline, and due process protections." (Doc. 8, ¶ 83). Wilkes objects that the plaintiffs "provide no further basis for this alleged 'duty' owed to them," (Doc. 47 at 22), an argument that fails for the same reasons as Law's identical argument. (Doc. 52 at 17).

Like Law, Wilkes also claims that Count Four fails to allege a breach of the asserted duty, *viz*., a failure to follow established policies and procedures. (Doc. 47 at 22). The Complaint, however, expressly alleges that, rather than fulfilling his "duty to ensure that school policies were followed," Wilkes "instead arbitrarily revoked the students' enrollment." (Doc. 8, ¶ 85). Count Four also alleges that Wilkes: expelled the minor plaintiffs without furnishing procedural safeguards (as provided in Policy 5.33); failed to follow the Board's protections for non-resident students (as provided in Policies

5

5.11 and 5.33); and failed to investigate or hold a hearing (as provided in Policy 5.33) before rendering his expulsion decision. (*Id*., ¶ 84). Breach of the alleged duty could hardly be more clearly alleged.

As noted, Wilkes argued in his principal brief that the duty of care was not adequately *alleged*. In his reply brief, Wilkes switches to an argument that no duty of care *exists*. (Doc. 51 at 8). Because that argument was available when he filed his principal brief, and because Wilkes offers no explanation for not raising it then, it will not be considered.[2]

## IX.  Intentional Infliction of Emotional Distress.

Wilkes' argument regarding Count Five, (Doc. 47 at 23-24), is an essentially verbatim repetition of Law's, and it fails for the same reasons. (Doc. 52 at 17-20).

## X.  Tortious Interference with Contractual Relations.

Wilkes' primary argument in his principal brief regarding Count Six, (Doc. 47 at 24-25), is an essentially verbatim repetition of Law's, and it fails for the same reasons. (Doc. 52 at 20-21).

Wilkes' principal brief contains an additional argument:  "Plaintiffs Benjamin and Melissa Walborn do not allege the nature of any contract that they have and their claim should be dismissed." (Doc. 47 at 25). No explanation accompanies this *ipse dixit*, which alone requires its rejection. In any event, the Complaint plainly sets forth the nature of the contract by alleging that Resolution 2024-01 "constituted a contract between the Board of Education and non-resident students and their families, including Plaintiffs." (Doc. 8, ¶ 78; *accord id*., ¶ 96).

---

[2] In their opposition brief, the plaintiffs referenced a duty of reasonable care owed by school officials to students under their supervision and control. (Doc. 50 at 14). While that discussion may have prompted Wilkes to *consider* an argument regarding the existence of a duty, it did not for the first time *make available* such an argument.

6

In his reply brief, Wilkes attempts to address the element he ignored in his principal brief. (Doc. 51 at 10). Once again, his argument comes too late to be considered.

In his reply brief, Wilkes also argues that the plaintiffs, in their responsive brief, "do not allege that they [Ben and Melissa] individually entered into a contract; thus their claims are due to be dismissed." (Doc. 51 at 9-10). The Complaint expressly alleges that all four plaintiffs were in a contractual relationship with the Board and District. (Doc. 8, ¶¶ 78, 96). That allegation is controlling on motion to dismiss unless the plaintiffs in their brief conceded that the parents were not in such a relationship. A review of the plaintiffs' brief makes clear that they did not do so. (Doc. 50 at 17-19). Wilkes' implicit assumption that a plaintiff withdraws any allegation of his pleading that he does not repeat in opposition to a motion to dismiss is unaccompanied by any authority or reasoning.

## XI. Arbitrary and Capricious Decision-Making.

Wilkes' argument in his principal brief regarding Count Seven, (Doc. 47 at 26), is identical to Law's, and it fails for the same reasons. (Doc. 52 at 21-22).

In his reply brief, Wilkes argues that the cases cited by the plaintiffs in their opposition brief do not establish the existence of a cause of action. (Doc. 51 at 10-11). The burden on motion to dismiss, however, is on Wilkes to demonstrate the non-existence of a cause of action, not on the plaintiffs to demonstrate its existence, and his mere *ipse dixit*, (Doc. 47 at 26), is inadequate to the task.

## XII. Equal Protection.

Wilkes' argument in his principal brief regarding Count Eight, (Doc. 47 at 26-27), is an essentially verbatim repetition of Law's, and it fails for the same reasons that her motion, and the entity defendants' motion, failed. (Doc. 43 at 12-13; Doc. 52 at 12-13).

Wilkes' reply brief returns to his original argument, (Doc. 51 at 11-12), but says nothing capable of altering the result of his motion.

Wilkes introduces yet another new argument in his reply brief: that "[t]here are no allegations that Benjamin and Melissa Walborn, in their individual capacities, have alleged [sic] an equal protection claim." (Doc. 51 at 12). This argument as well comes too late, and it is plainly incorrect: the fourth class of alleged disparate treatment expressly complains of the plaintiffs being treated worse than "other parents." (Doc. 8, ¶ 111.d).

## XIII. Defamation.

Count Nine alleges that Wilkes "published and/or communicated false and defamatory statements of and concerning Plaintiff Benjamin Walborn to third parties, including but not limited to the School Board and potentially school staff." (Doc. 8, ¶ 119). "These statements included, inter alia, that Plaintiff Benjamin Walborn used his sons [sic] tablet to harass other minor students." (*Id*., ¶ 120).

An essential element of a defamation claim is a publication, that is, "a communication to one or more persons other than the parties." *Watters v. Birmingham Hematology and Oncology Associates, LLC*, 392 So. 3d 42, 49 (Ala. 2023) (internal quotes omitted). "Because a business entity can act only through its servants, agents, or employees, ... when officers and employees of a corporation act within the scope of their employment and within the line of their duties, they are not third persons, and their communications are, therefore, communications of the company with itself." *Id*. (internal quotes omitted). Wilkes argues that, because the Complaint alleges communication only from himself to the Board and to school staff, it fails to allege publication and therefore fails to state a claim for defamation. (Doc. 47 at 28-29).

As Wilkes' statement of the rule reflects, communications between employees or agents of the same entity fail to satisfy the publication requirement only if the participants are acting within the scope of their employment and within the line of their duties. Wilkes does not address this requirement, much less explain how the mere identification of the participants negates their having acted outside the scope of their employment and outside the line of their duties. For all that appears from the Complaint, Wilkes may have

8

made the statements to school custodians lacking any authorized role in the Walborn matter.

In his reply brief, Wilkes attempts to rescue the situation, arguing that the Complaint fails to plausibly allege publication because it fails to allege that he or the recipients were acting outside the line and scope of their duties. (Doc. 51 at 14). Again, the argument was improperly withheld from Wilkes' principal brief and thus will not be considered. Even were it otherwise, Wilkes fails to support his implicit assumption that federal pleading rules require a defamation complaint to contain such an allegation. (Doc. 43 at 3; Doc. 52 at 3).

Finally, Wilkes in his reply brief first argues that only Ben can have any claim for defamation and that the defamation claims of the other plaintiffs should be dismissed. (Doc. 51 at 12). Because Wilkes did not raise this argument until his reply brief, it will not be considered.

## XIV.  Injunctive and Declaratory Relief.

Wilkes' argument regarding Count Ten, (Doc. 47 at 29), is a truncated version of Law's, and it fails for the same reasons. (Doc. 52 at 22).

## CONCLUSION

For the reasons set forth above, Wilkes' motion to dismiss is **granted** as to damages in his official capacity vis-a-vís the Board under Counts Four, Five, Six, and Seven. Counts Four, Five, and Six are **dismissed** as to Wilkes in his official capacity vis-a-vís the Board. The motion to dismiss is in all other respects **denied**.

DONE and ORDERED this 31st day of July, 2026.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

9